**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DEBORAH L JOHNSON,**

                    **Plaintiff,**

          **v.**                                              **Civil Action 2:15-cv-2525**
                                                              **Judge Michael H. Watson**
                                                              **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

                    **Defendant.**

## REPORT AND RECOMMENDATION

        Plaintiff, Deborah L. Johnson, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income ("SSI").  For the

reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's

nondisability finding and **REMAND** this case to the Commissioner and the Administrative Law

Judge ("ALJ") under Sentence Four of § 405(g).

## I. BACKGROUND

**A.      Prior Proceedings**

        Plaintiff filed her SSI application on June 27, 2011, alleging a disability onset date of

June 10, 2011.  (*See* Doc. 10-3 at Tr. 162, PAGEID #: 207).  She appeared for an administrative

hearing on February 26, 2014 (*see* Doc. 10-2 at Tr. 78, PAGEID #: 122), and a supplemental

administrative hearing on July 30, 2013 (*see id.* at Tr. 38, PAGEID #: 82).  The ALJ denied

benefits on January 27, 2014 (*see id.* at Tr. 30, PAGEID #: 74), which became the

Commissioner's final decision when the Appeals Council denied review on May 12, 2015.

Plaintiff now appeals, arguing that the ALJ erred in giving little weight to the opinions of her treating physician, Dr. Melinda Ford.  (*See* Docs. 10-1–10-8 (administrative record); Doc. 11 (statement of specific errors); Doc. 16 (memorandum in opposition)).

**B.      Plaintiff's Testimony at the Administrative Hearings**

**1.      The First Hearing**

At the time of the first administrative hearing, Plaintiff was 56 years old and lived by herself.  (*See* Doc. 10-2 at Tr. 81–82, PAGEID #: 125–26).  She had been a hairstylist for thirty-three years until 2002, when her doctor told her she needed to find a new career.  (*See id.* at Tr. 85–86, PAGEID #: 129–30).  Since then, she has not held any other job for more than a few weeks.  (*See id.* at Tr. 92, PAGEID #: 136).

Relevant to this appeal, Plaintiff testified regarding her back pain and fibromyalgia.  She told the ALJ she has "three bulging discs" and "bilateral arthritis" in her "lower spine," as well as "fibromyalgia in [her] lower spine and everywhere else."  (*Id.*).  Plaintiff testified she could sit or stand only for twenty-minute intervals and spends most of her days lying down.  (*See id.* at Tr. 90, 92, PAGEID #: 134, 136).  She said the most she could lift was a five-pound bag of dog food.  (*See id.* at Tr. 92, PAGEID #: 136).

Plaintiff also spoke to her daily routine, testifying she would normally get up around 7:30 a.m. if her medicine worked.  (*See id.* at Tr. 95, PAGEID #: 139).  She would let her dog out and then "come back in" to "drink coffee," "smoke cigarettes," and "wait for the meds to wear off and grogginess to go away so [she could] get up and get dressed."  (*Id.*).  She was able to care for her personal hygiene but was not able to give her house "a thorough, proper cleaning" because of her back and body pain.  (*Id.* at Tr. 96, PAGEID #: 140).  She did not do any gardening or outdoor activities (*id.* at Tr. 97, PAGEID #: 141), but did walk for twelve minutes a day on the

treadmill even though it made her back hurt (*see id.* at Tr. 100, PAGEID #: 144).   Outside of a few minimal activities of daily living, Plaintiff testified she spent "all day" watching television. (*Id.* at Tr. 97, PAGEID #: 141; *see also id.* at Tr. 97–98, PAGEID #: 141–42).   Plaintiff did do her own grocery shopping even though it was difficult and left her sore.   (*See id.* at Tr. 101–02, PAGEID #: 145–46).   She relied on two members of the community, a man and his son, for help with "anything major," such as "yard work" or unloading the groceries.   (*Id.* at Tr. 99, PAGEID #: 143; *see id.* at Tr. 102, PAGEID #: 146).

### 2.    The Second Hearing

The matter came before the ALJ several months later in July of 2013 for a supplemental hearing.   (*See* Doc. 10-2 at Tr. 38–39, PAGEID #: 82–83).   Although most of the hearing was devoted to follow-up testimony regarding a supplementary interrogatory, the ALJ allowed Plaintiff to offer additional testimony regarding topics covered at the previous hearing.   Plaintiff clarified that she cannot cook a full meal, explained how and why doing laundry gives her so much trouble, detailed her low energy levels when she does anything around the house, and explained which chores are the hardest for her.   (*See id.* at Tr. 41–43, PAGEID #: 85–87).

## C.    The Medical Records

Dr. Ford, Plaintiff's treating physician, has treated Plaintiff since 2005.   (*See* Doc. 10-7 at Tr. 364, PAGEID #: 413).   In June of 2007, Plaintiff began complaining of what Dr. Ford at the time understood as arthritis-related pain in her neck, shoulders, and back.   (*See id.* at Tr. 359–60, PAGEID #: 408–09).   Plaintiff continued to make the same complaints through the rest of 2007. (*See id.* at Tr. 356–58, PAGEID #: 405–07).   Treatment notes in 2008 refer to problems associated with fibromyalgia (*see id.* at Tr. 354, PAGEID #: 403), and notes from Plaintiff's regular visits throughout 2008 reflect complaints of pain "all over" (*id.* at Tr. 351, PAGEID #:

3

400), particularly in her neck and back (*see id.* at 353, PAGEID #: 402). (*See also id.* at Tr. 349–50, PAGEID #: 398–99).

Dr. Ford continued to treat Plaintiff in 2009 and 2010, and she continued to have back, neck, and whole-body pain. (*See id.* at Tr. 335–45, PAGEID #: 384–94). By early 2011, Plaintiff complained that she "hurt all over," with pain in some parts of her body that was "absolutely unbearable." (*Id.* at 333, PAGEID #: 382). "She state[d] that her fibromyalgia [made] her hurt from the top of her head to the muscles of her feet" and that she was "consumed by the pain all the time." (*Id.*; *see also id.* at Tr. 330, PAGEID #: 379). Plaintiff continued to tell Dr. Ford of neck, back, and whole-body pain through 2012. (*See, e.g.*, *id.* at Tr. 426–28, 430–32, 435, 437, 439, PAGEID #: 475–77, 479–81, 484, 486, 488). Based upon her treatment of Plaintiff, Dr. Ford offered several opinions for the sake of Plaintiff's SSI application, one of which the Court discusses below in resolving this appeal. (*See, e.g.*, *id.* at Tr. 365, PAGEID #: 414; *id.* at Tr. 379–80, PAGEID #: 428–29; *id.* at Tr. 655, PAGEID #: 705).

The record also includes physical-therapy treatment notes documenting Plaintiff's complaints of whole-body and back pain. (*See id.* at Tr. 389–90, 399–401, 406, 407–08, PAGEID #: 438–39, 448–50, 455, 456–57). In addition, Plaintiff underwent an MRI in August of 2012, the results of which identified moderately advanced disc degenerative disease, disc bulging, and mild multilevel facet arthritis. (*See id.* at Tr. 470, PAGEID #: 519).

**D.     The ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of June 27, 2011. (*See* Doc. 10-2 at Tr. 16, PAGEID #: 60). She then concluded several of Plaintiff's impairments were severe, including her fibromyalgia, degenerative disc disease of the lumbar spine, and degenerative joint disease in the cervical spine

4

and left shoulder.  (*See id.* at Tr. 16–17, PAGEID #: 60–61).  In discussing the severity of her fibromyalgia, the ALJ cited, among other things, "physical exams performed by [Plaintiff's] treating physician [that] indicate diffuse tenderness throughout all muscle groups." (*Id.* at Tr. 17, PAGEID #: 61).  As for Plaintiff's other issues, the ALJ noted "the record . . . documents lumbar degenerative disease with disc bulging at the L3/4 and L4/5 levels [and] mild multilevel facet arthritis," "degenerative spurring at the facet joints" "of [Plaintiff's] cervical spine," and "mild degenerative changes . . . in the claimant's left shoulder." (*Id.*).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") and concluded Plaintiff could perform medium work.  She held Plaintiff could lift 25 pounds frequently and 50 occasionally, as well as sit, stand, and walk for a total of six hours in an eight-hour work day. (*See id.* at Tr. 22, PAGEID #: 66).  In reaching this conclusion, the ALJ gave all the opinions of Dr. Ford, Plaintiff's treating physician, little weight. (*See id.* at Tr. 26–27, PAGEID #: 60–61). The ALJ finally concluded that there were jobs in the national economy that Plaintiff could perform and therefore denied benefits. (*See id.* at Tr. 28-30, PAGEID #: 72–74).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v.*

*Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002).

## III. DISCUSSION

**A.      Controlling Weight to Plaintiff's Treating Physician**

**1.      Dr. Ford's March 2013 Letter**

By the time of the hearings, Dr. Ford had treated Plaintiff on a consistent basis for five years.  Her treatment notes demonstrate that Plaintiff regularly presented with some combination of whole-body pain, neck pain, or back pain related to her fibromyalgia.  (*See, e.g.*, Doc. 10-7 at Tr. 330–360, PAGEID #: 379–409; *id.* at Tr. 426–39, PAGEID #: 475–88).  At issue on appeal is a letter Dr. Ford wrote in March of 2013 regarding Plaintiff's health and limitations.  Addressed "To Whom It May Concern," it states in relevant part:

> I have been seeing [Plaintiff] for 5 years.  She has had long term issues with low back pain due to lumbar disc disease as well as pain and stiffness in multiple muscle groups due to fibromyalgia. . . .  She had an MRI of her lumbar spine in August 2012 that showed moderately advanced disc disease at L2-3, bulging discs at L3-4 and L4-5, and multi-facet arthritis.  She cannot stand for more than 20 minutes at a time due to pain from these issues.  She can lift only less than 10 pounds on a regular basis with infrequent lifting of more than that and no lifting over 20 pounds.  She can sit only for about 15 minutes at a time and would need frequent position changes to allow her to not stiffen up significantly.  She cannot bend very often and cannot be[n]d to lift weight at any time without significant pain in her low back.

(Doc. 10-8 at Tr. 655, PAGEID #: 705).

 The ALJ gave all of Dr. Ford's opinions, including the opinions Dr. Ford laid out in her March 2013 letter, little weight.  She reasoned the opinions in the March 2013 letter in particular were "inconsistent with the objective evidence" (Doc. 10-2 at Tr. 27, PAGEID #: 71), and then gave the following explanation:

6

> [S]ubsequent treatment records fail to corroborate these limitations. Specifically, in May 2013, the claimant complained of back problems but denied numbness and tingling. . . . She had full range of motion of the upper and lower extremities. She had only 10 out of 18 positive fibromyalgia tender points. The source changed the claimant's medication but no significant problems were observed or documented.

(*Id.* (citation omitted)).

### 2. Analysis

Under the treating-physician rule, "the Commissioner has mandated that the ALJ '*will*' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (emphasis added) (quoting 20 C.F.R. § 404.1527(d)(2)). No matter how much weight the ALJ gives a treating physician's opinion, she must "always give good reasons" for her determination. 20 C.F.R. § 404.1527(c)(2). "This requirement is not simply a formality," *Cole*, 661 F.3d at 937, but is a "procedural" safeguard that "serves both to ensure adequacy of review and to permit the claimant to understand the disposition of h[er] case," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550–51 (6th Cir. 2010). Under the rule, the administrative law "judge's 'good reasons' must be supported by the evidence in the record." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 426 (6th Cir. 2014); *see also, e.g.*, *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011).

Plaintiff argues the ALJ fell short of this requirement because the reason the ALJ gave for discounting the March 2013 letter—that it was inconsistent with the objective evidence of record—is incorrect. The Court agrees.

First, contrary to the ALJ's conclusion, the objective record evidence does in fact support Dr. Ford's opinion. Dr. Ford's treatment notes over her five years of treatment are consistent

and support her opinions that Plaintiff's back and whole-body pain were significant and would thus limit Plaintiff's ability to function in the workplace.  (*See, e.g.*, Doc. 10-7 at Tr. 330, 333, 335, 337, 339, 343, 345, 349–50, PAGEID #: 379, 382, 384, 386, 388, 392, 394, 398–99; *id.* at Tr. 426–28, PAGEID #: 475–77).  The record also contains physical-therapy notes and MRI results confirming Plaintiff's pain and limitations.  (*See id.* at Tr. 389–90, 399–401, 406, 407–08, PAGEID #: 438–39, 448–50, 455, 456–57 (physical therapy); *id.* at Tr. 470, PAGEID #: 519 (MRI)).  In other words, the record is full of objective evidence consistent with Dr. Ford's opinions from March of 2013 regarding Plaintiff's limitations and pain.  The ALJ erred when she concluded otherwise.

Second, the portions of the record the ALJ chose to cite in support of her opinion that Dr. Ford's opinions were inconsistent with the rest of the record show the exact opposite.  As an illustrative example, the ALJ relied on treatment notes from Plaintiff's visit to a doctor she saw one time, in May of 2013, to support her conclusion that the post-March 2013 treatment notes "fail to corroborate [Dr. Ford's opinions on Plaintiff's] limitations."  (Doc. 10-2 at Tr. 27, PAGEID #: 71).  The ALJ's characterization of the treatment notes is not accurate.  The notes from the one-time doctor's visit indicate Plaintiff was still in significant pain related to her fibromyalgia at that time.  (*See, e.g.*, Doc. 10-8 at Tr. 656, PAGEID #: 706 ("[Plaintiff] has multiple joint and muscle pain . . . .  Has been having pain for several years and has been having a lot of back problems.  Has been told that she has bulging disk in her back. . . .  Went to aquatic therapy but didn't notice much of a difference. . . .")).

The rest of the ALJ's explanation similarly falls short.  The ALJ explained that subsequent treatment notes undercut Dr. Ford's opinions because Plaintiff: did not report numbness or tingling, did not have any side effects from her medication, was able to sleep eight

hours a night at that time, was alert in her visit, had full range of motion in her limbs, reported "10 out of 18 positive fibromyalgia tender points," and did not report any issues after changing her medication.  (Doc. 10-2 at Tr. 27, PAGEID #: 71).  Again, contrary to the ALJ's view, none of these statements contradicts Dr. Ford's opinions regarding Plaintiff's limitations or her overall conclusion that Plaintiff experienced immense back and body pain due to her fibromyalgia. Moreover, treatment notes following the May 2013 visit contradict the ALJ's statement that Plaintiff did not have any issues with her medication, sleep, or range of motion.  (*See, e.g.*, Doc. 10-8 at Tr. 661, PAGEID #: 711 (August 2013 treatment notes where Plaintiff reported "severe" pain and "discomfort," and demonstrated "a significant decrease of normal range of motion"); *see also id.* at Tr. 664–75, PAGEID #: 714–25 (demonstrating consistently severe pain in back, legs, and body, as well loss of range of motion and increased need for better pain medication from September to November 2013); *id.* at Tr. 677, PAGEID #: 727 (January 2014 treatment notes: "Patient reports her worse joint pain in her lower back over 3 years."); *id.* at Tr. 680, PAGEID #: 730 (July 2013 treatment notes: "Can not tolerate either medication . . . .  Sleeping about 2-3 hours straight at night. . . .")).

In short, Dr. Ford's opinions are consistent with the objective evidence of record. Additionally, the record citations and accompanying explanation the ALJ provided for discounting Dr. Ford's March 2013 letter are either inaccurate or do not undermine Dr. Ford's opinions.  The ALJ therefore did not provide good reasons for assigning little weight to the March 2013 opinions of Plaintiff's treating physician.  Her error requires reversal.  *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 652 (6th Cir. 2011) ("While the Commissioner contends that the ALJ gave 'good reasons' for his conclusion, in our view they are unsupported by the record as a whole and are clearly erroneous."); *Brooks v. Soc. Sec. Admin.*, 430 F. App'x

468, 481 (6th Cir. 2011) (holding the ALJ failed to "present *good* reasons," *id.* at 483, where, "[o]f the four 'good reasons' that the ALJ can be understood to have offered for his decision . . . , two are not supported by the record"); *Wisecup v. Astrue*, No. 3:10CV00325, 2011 WL 3353870, at *8 (S.D. Ohio July 15, 2011) ("[T]he ALJ, did not identify a single inconsistent piece of medical evidence and, although the ALJ referred to Dr. Kirkwood's own records, the ALJ did not identify an single inconsistency emerging from those records."), *report and recommendation adopted*, No. 3:10CV00325, 2011 WL 3360042 (S.D. Ohio Aug. 3, 2011).

The Commissioner resists this conclusion. Beyond pointing to the notes from the one-time doctor's visit in May of 2013 that do not undercut Dr. Ford's opinion, the Commissioner relies on the ALJ's conclusion that Dr. Ford's opinions about Plaintiff's fibromyalgia were largely based on Plaintiff's subjective complaints of pain. (*See* Doc. 16 at 9). But when it comes to fibromyalgia, the Sixth Circuit rejects the use of such a rationale to limit the weight of a treating-source opinion. *Kalmbach*, 409 F. App'x at 862 ("Further, the ALJ's rejection of the treating physicians' opinions [for the same reason here] obviously stems from his *fundamental misunderstanding of the nature of fibromyalgia*. . . . We have recognized on more than one occasion, however, that fibromyalgia patients generally present no objectively alarming signs." (emphasis added) (internal quotation marks omitted)).

The Commissioner also argues, as the ALJ noted in her opinion, that Plaintiff was not always compliant with treating sources' suggestions for pain improvement—like the recommendation to quit smoking and lose weight. However, the ALJ neglected to note that Plaintiff had reduced her forty-year habit of smoking two packs of cigarettes a day to one pack a day by the time of the hearing (*see* Doc. 10-2 at Tr. 86, PAGEID #: 130); and he did not credit Plaintiff's explanation regarding her attempts to increase her exercise (*see id.* at Tr. 100,

PAGEID #: 144 (Plaintiff noting that she "worked [her]self up to 12 minutes . . . on the slowest [treadmill] setting" even though it made her back hurt); *id.* at Tr. 97, PAGEID #: 141 (noting that her doctor "wants [her] to walk 30 minutes" but she "only manage about 15")). *See Crowther v. Comm'r of Soc. Sec.*, No. 1:11-CV-394, 2012 WL 2711041, at *18 (S.D. Ohio July 6, 2012), *report and recommendation adopted*, No. 1:11CV394, 2012 WL 3113324 (S.D. Ohio July 31, 2012) ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record . . . ." (quoting SSR 96–7p, 1996 WL 374186, at *l–2)).  Setting these issues aside, the Court cannot conclude that Plaintiff's inability to master fully all treatment recommendations qualifies as substantial evidence to overcome a treating physician's opinions derived from five years of treatment, observation, and reports. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) ("Instead of performing a proper analysis of the medical evidence under agency regulations and controlling case law, the ALJ cherry-picked select portions of the medical record to discredit [Plaintiff]'s pain.").

## B.      The Remaining Assignments of Error

Plaintiff also argues the ALJ erred in downgrading Plaintiff's credibility, particularly in light of the ALJ's finding that Plaintiff's fibromyalgia qualified as a severe impairment.  Though this argument and the supporting reasons Plaintiff provides have some merit, the Court's decision to reverse and remand on the ALJ's treating-physician error does away with the need for an in-depth analysis of Plaintiff's remaining assignment of error.  Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignment of error if appropriate. *See Bronstetter v. Comm'r of Soc. Sec.*, No. 3:14-CV-00112, 2015 WL 4540395, at *4 (S.D. Ohio May 18, 2015);

*Cox v. Comm'r of Soc. Sec.*, No. 2:13-CV-1203, 2015 WL 1000648, at *3 n.1 (S.D. Ohio Mar. 5, 2015).

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the ALJ pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).  Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date: June 29, 2016                                      /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE

12